IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JOSHUA BRET PARISH<br>and HEATH W. HICKS,<br><br>  Plaintiffs,<br><br>v.<br><br>DEPT JAMIE BRAGGS *et al.*,<br><br>  Defendants. | )<br>)<br>)<br>)   NO. 1:23-CV-00053<br>)<br>)   JUDGE CAMPBELL<br>)   MAGISTRATE JUDGE HOLMES<br>)<br>)<br>) |

## MEMORANDUM OPINION

Joshua Bret Parish and Health W. Hicks, both pretrial detainees in the custody of the Hickman County Sheriff's Office in Centerville, Tennessee, co-filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against Dept Jamie Braggs, Dept f/n/u Battes, Dept f/n/u Stallard, and Dept f/n/u Walker. (Doc. No. 1). Parish also filed a "Motion of Transport for Lawsuit" (Doc. No. 3), Motion for Jail Transfer (Doc. No. 7), "Motion of Transport for Lawsuit against Hickman County Jail Staff" (Doc. No. 8), a supplement to the complaint (Doc. No. 10), a joint Motion of Transfer (Doc. No. 11) with inmate Michael Glen Singer, two Requests for Jail Transfer (Doc. Nos. 15 & 17), Motion of Transfer (Doc. No. 18), Motion for Extension of Time to File Paperwork (Doc. No. 20), and Motion for Transfer (Doc. No. 21). Hicks, too, filed a supplement to the complaint. (Doc. No. 9).

## I. PRELIMINARY MATTERS

Before turning to the screening of the complaint required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must address some preliminary matters.

1

First, Parish recently filed a Motion for Extension of Time to obtain the right forms and "paperwork" for filing this action and pursuing pauper status. (Doc. No. 20 at 1). However, with respect to Parish, the Court has received a signed complaint, an Application for Leave to Proceed In Forma Pauperis, and a certified trust fund statement. Because no additional "paperwork" is required at this time, Parish's Motion (Doc. No. 20) will be denied as moot.

Next, in addition to the filings by Parish and Hicks, the Court received an Amended Complaint bearing the case number of the instant case. (Doc. No. 6 at 1). While the Amended Complaint lists Parish and Hicks as Plaintiffs, it also lists Jason Russell and Michael Glenn Singer, who, too, appear to be inmates of the Hickman County Jail. (Doc. No. 6 at 1). However, the Amended Complaint does not contain the signatures of Parish, Hicks, Russell, or Singer. Because a filing submitted by a pro se party must bear the party's signature, *see* Fed. R. Civ. P. 11(a) (requiring all parties not represented by an attorney to personally sign every filing submitted to the court), and because this case cannot proceed piecemeal with different inmates seeking to be added as plaintiffs by multiple separate filings, the Court ordered all persons who wish to be considered as co-plaintiffs to this action to, no later than October 11, 2023, (1) sign the complaint (or a copy of the complaint) submitted by Plaintiffs Parish and Hicks in this action and return that signed complaint to the Court and (2) submit an application for leave to proceed in forma pauperis or a written statement stating their intention to pay their portion of the filing fee in this case. (Doc. No. 12 at 2).

That deadline has passed, and neither Russell nor Singer have submitted anything further to the Court. Therefore, the Court does not consider Russell or Singer to be plaintiffs in this action, and no filing fee will be assessed against them.

Additionally, neither Parish nor Hicks returned a signed copy of the Amended Complaint. The Court cannot accept an unsigned pleading. Therefore, the document submitted as the Amended Complaint (Doc. No. 6) will not be considered by the Court when performing the required PLRA screening. With the permission of the Magistrate Judge, Plaintiffs may file a properly-submitted Amended Complaint, if desired, at a later date.

Because Singer is not a party to this action, Parish's joint Motion of Transfer (Doc. No. 11) with Singer will be denied as moot. In any event, Parish has filed multiple motions seeking transfer to another jail, and the Court will entertain those motions following the required PLRA screening of the complaint.

## II. SCREENING OF THE COMPLAINT

**A. PLRA Screening Standard**

The complaint is before the Court for an initial review pursuant the PLRA. Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted

by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**B. Section 1983 Standard**

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

**C. Facts Alleged in the Complaint as Supplemented**

On August 10, 2023, Hickman County Jail officers Battes,[1] Braggs, Stallard, Driver, Walker, Quillen, and Jenkins entered the D-pod for a headcount and instructed the inmates to line up in front of the pod door. The inmates were then directed to the yard. When the inmates returned to their cells, they noticed "[i]t was full of pepper spray," and Plaintiffs' eyes and lungs were burning. (Doc. No. 1 at 15). Officer Battes "had shot the D-pod up with pepper spray and locked [Plaintiffs] in the pod." (*Id.*) Jail staff refused to turn over the exhaust fans to clear the air. Plaintiffs "were kicking on the door for help." (*Id.*) Officer Battes returned and shot pepper spray "5 to 6 more times under the door." (*Id.*) He also directed pepper spray into the nurses' area. Ten minutes

---

[1] Plaintiffs refer to this officer both as Battes and Batts. (*See* Doc. No. 1 at 1, 15). Herein, the Court uses Battes, the first spelling used by Plaintiffs, for ease of reference.

later, he returned again, smiling and laughing with Braggs, Stallard, Driver, Walker, Quillen, and Jenkins.

Plaintiffs were "hurting for 3 days with [their] lungs full of pepper spray", and their eyes burned for hours. (*Id*. at 16). Plaintiffs "could not breathe" and coughed up blood. (*Id*. at 5). Plaintiffs were unable to obtain medical treatment because the jail nurse had been affected by the pepper spray as well.

Plaintiffs' belongings were covered with pepper spray. While Plaintiffs were out of their cells, Officers Battes, Braggs, Stallard, Driver, Walker, Quillen, and Jenkins took several of Plaintiff's commissary items. Officer Battes told an inmate to relay to Plaintiffs and other D-pod inmates that he would take their commissary away if they "didn't calm down." (Doc. No. 1-1 at 1-2).

Chief Cox told the affected inmates that, if they spoke out about what happened, "he would take [Plaintiffs'] families [sic] money and whatever he could and our money and whatever he could and leave us with ten dollars." (Doc. No. 9 at 1-2). Specifically, Chief Cox said that "he has been in 9 lawsuits, 7 of those 9 he has won and 5 of these 7 he sued the people back and took their families [sic] assets, even if he only won 10 dollars." (Doc. No. 10 at 2). Plaintiffs perceived Cox's statement to be a threat if Plaintiffs filed a grievance or lawsuit about the pepper spray incident.

As relief, Plaintiffs seek an unspecified amount of damages for pain and suffering and bodily harm. (Doc. No. 1 at 5).

**D. Analysis**

Plaintiffs name Deputy Jamie Braggs, Deputy f/n/u Battes, Deputy f/n/u Stallard, and Deputy f/n/u Walker as Defendants to this action. (Doc. No. 1 at 2-3). Plaintiffs sue all Defendants in their official and individual capacities. (*Id*.) Plaintiffs allege that Defendants violated Plaintiffs' rights under the Eighth Amendment to the United States Constitution.

### 1. Claims against Defendants in their individual capacities

From the complaint, it appears Plaintiffs were pretrial detainees at the time of the alleged use of excessive force. The legal status of an alleged victim of excessive force is significant because the conduct of the offending officer must be analyzed under the standard appropriate to the applicable constitutional provision.

Under the Eighth Amendment, which applies to convicted prisoners, an officer's conduct will be found to amount to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring a court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted was sufficiently serious." *Cordell*, 759 F.3d at 580 (internal quotation marks and citations omitted) (alteration added). The heightened Eighth Amendment standard acknowledges that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Id*. (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original).

The Fourteenth Amendment's Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). A pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. *See id*. "The Supreme Court has recently clarified . . . that when assessing pretrial detainees excessive force claims we must inquire into whether the plaintiff shows

'that the force purposefully or knowingly used against him was objectively unreasonable.'" *Coley v. Lucas Cnty., Ohio,* 799 F.3d 530, 538-39 (6th Cir. 2015) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

Here, the Fourteenth Amendment analysis applies because Plaintiffs are pretrial detainees. Based on the allegations in the complaint pertaining to his use of pepper spray in the D-pod, the Court finds that the complaint states colorable Fourteenth Amendment excessive force claims under Section 1983 against Officer Battes in his individual capacity. These allegations warrant further factual development. The complaint fails to allege colorable excessive force claims against the other individual Defendants.

Next, although the complaint does not name Chief Cox as a defendant, the Court finds that it is appropriate under the record presented to consider a retaliation claim against Chief Cox. A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id.* at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X,* 175 F.3d at 396. The plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

In *Hill v. Lappin*, the Sixth Circuit reversed the district court's dismissal of a First Amendment retaliation claim on initial review, emphasizing that the essential elements of such a claim are not overly difficult to establish, "especially in light of the 'indulgent treatment' that '[c]ourts are instructed to give . . . to the 'inartfully pleaded' allegations of pro se prison litigants." 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Pasley v. Conerly*, 345 F. App'x 981, 986 (6th Cir. 2009)). The Court of Appeals indicated that, where the facts alleged in a prisoner's complaint are sufficient to support these elements, the claim should go forward even if the inmate "fails to explicitly state" that he is making a First Amendment retaliation claim or does not "make an effective argument for that claim in his . . . complaint." *Id*. (citing *Pasley*, 345 F. App'x at 986). Thus, the Court considers whether the instant pro se complaint alleges a non-frivolous retaliation claim under Section 1983 against Chief Cox.

It is well established that prisoners have a constitutional right to access the courts. *Jones v. Tenn.*, No. 3:23-CV-9-KAC-DCP, 2023 WL 4379944, at *6 (E.D. Tenn. July 6, 2023) (citing *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (recognizing claim where the inmate alleged that prison officials "impermissibly retaliated against him for exercising his First Amendment right to file grievances and petition the court for redress")). An officer's threat to sue your family and take their money, such as the threat Chief Cox allegedly made to Plaintiffs, would likely have a strong deterrent effect on a prisoner's protected activity. And Chief Cox allegedly threatened Plaintiffs directly after Plaintiffs indicated interest in pursuing grievances about the August pepper spray incident. *See Hill*, 630 F.3d at 475-76 (retaliatory motive can be supported by circumstantial evidence including "the temporal proximity between the prisoner's protected conduct and the official's adverse action") (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 525-26, (6th Cir. 2010)); *see also Arrington v. Wickstrom*, 2012 WL 1029957 (W.D. Mich. Mar. 27, 2012) (where

plaintiff alleged that defendant retaliated against him by planting contraband in his cell and threatened that filing lawsuits would cause more pain, concluding those allegations were sufficient to permit a jury to find that defendant planted the contraband). The Court therefore finds that the complaint states a colorable First Amendment retaliation claim under Section 1983 against Chief Cox in his individual capacity. That claim will proceed.

### 2. Claims against Defendants in their official capacities

The Court now moves to Plaintiffs' claims against Defendants in their official capacities. When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here, the complaint alleges that Defendants are employees of the Hickman County Jail. (Doc. No. 1 at 2-3). Thus, a claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision, or custom promulgated by Hickman County or its agent. *Monell Dep't of Social Svcs.*, 436 U.S. 658, 690-691 (1978). In short, for Hickman County to be liable Plaintiffs under Section 1983, there must be a direct causal link between an official county policy or custom and the alleged violation of Plaintiffs' constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. 658, 693); *Regets v. City of Plymouth*, 568 F. App'x 380, 393 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478.

9

Case 1:23-cv-00053   Document 22   Filed 10/27/23   Page 9 of 11 PageID #: 130

Here, the allegations of the complaint are insufficient to state a claim for municipal liability against Hickman County under Section 1983. The complaint does not identify or describe any of the county's policies, procedures, practices, or customs relating to the incidents at issue; the complaint does not identify any particular shortcomings in training or supervision or how those shortcomings caused the alleged violations of Plaintiffs' rights; and it does not identify any other previous instances of similar violations that would have put the county on notice of a problem. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp.2d 931, 944 (M.D. Tenn. 2012). Consequently, the Court finds that the complaint does not contain sufficient allegations to state a claim for municipal liability against Hickman County. Plaintiffs' Section 1983 claims against Defendants in their official capacities (which are claims against Hickman County) therefore must be dismissed.

### III. PENDING MOTIONS

Plaintiff Parish has filed a "Motion of Transport for Lawsuit" (Doc. No. 3), Motion for Jail Transfer (Doc. No. 7), "Motion of Transport for Lawsuit against Hickman County Jail Staff" (Doc. No. 8), two Requests for Jail Transfer (Doc. Nos. 15 & 17), a Motion of Transfer (Doc. No. 18) and a Motion for Transfer (Doc. No. 21).

Two of Parish's motions are unsigned (Doc. Nos. 15 and 17). Thus, the Court cannot consider them, and they will be denied for that reason. Parish's signed motions ask that he be transferred from the Hickman County Jail, where he presently is detained, to the "Franklin Jail", where he states that he has other charges pending against him. (Doc. No. 3 at 1). "[P]lacement of prisoners is a matter left to the discretion of state officials, and a prisoner has no constitutional right or protected liberty interest to be housed in any particular facility or unit." *Sherman v. Washington Cnty. Det. Ctr.*, No. 2:16-CV-27-TWP-MCLC, 2018 WL 1405279, at *3 (E.D. Tenn. Mar. 20, 2018) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983)). The Supreme Court

has stated that "[t]he federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States." *Meachum v. Fano*, 427 U.S. 215, 229 (1976) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491-492 (1973)). Likewise, absent extraordinary circumstances which are not present at the instant time, the Court is not inclined to micro-manage local jails and force a transfer of an inmate from one facility to another. Thus, Plaintiff's requests for the Court to order the transfer of Plaintiff to the "Franklin Jail" will be denied.

## IV. CONCLUSION

Having conducted the screening required by the PRLA, the Court finds that the complaint states a colorable Fourteenth Amendment excessive force claim under Section 1983 Officer Battes in his individual capacity. The complaint also states a colorable First Amendment retaliation claim under Section 1983 against Chief f/n/u Cox. These claims will proceed for further development.

However, the excessive force claims against all Defendants in their official capacities fail to state claims upon which relief can be granted under Section 1983. Likewise, the excessive force claims against Defendants Braggs, Stallard, and Walker fail to state Section 1983 claims upon which relief can be granted. Those claims, therefore, will be dismissed.

An appropriate Order will be entered.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE